# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HARVEY N. LEVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 07 C 4765 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| LISA MADIGAN, individually, and as | ) |
| ILLINOIS ATTORNEY GENERAL, | ) |
| OFFICE OF THE ILLINOIS ATTORNEY | ) |
| GENERAL, THE STATE OF ILLINOIS, | ) |
| ANN SPILLANE, individually, | ) |
| ALAN ROSEN, individually, | ) |
| ROGER P. FLAHAVEN, individually, | ) |
| And DEBORAH HAGEN, individually, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harvey Levin ("Plaintiff"), a former Senior Assistant Attorney General, filed a four-count complaint alleging discrimination on the basis of age and sex by the following Defendants: the Office of the Illinois Attorney General; the State of Illinois; Lisa Madigan, acting in her official capacity as the Illinois Attorney General; and individual defendants Lisa Madigan, Ann Spillane, Alan Rosen, and Roger Flahaven. Plaintiff's Complaint sets forth the following claims: Age Discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 in Count I; Sex Discrimination under Title VII, 42 U.S.C. § 2000 in Count II; Discrimination based on Sex in violation of Equal Protection, 42 U.S.C. § 1983 in Count III; and Discrimination based on Age in violation of Equal Protection, 42 U.S.C. § 1983 in Count IV. Before this Court now brought by the Office of the Attorney General, the State of Illinois, and Attorney General Madigan (collectively "Defendants") is a motion to dismiss

Counts I and II of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss Counts I and II is DENIED.

**FACTS**[1]

Plaintiff was a Senior Assistant Attorney General in the Consumer Fraud Bureau of the Illinois Attorney General's Office at the time of his termination on May 12, 2006. He was hired as an Assistant Attorney General on or about September 5, 2000, by Patricia Kelly, the Chief of Consumer Protection, with the approval of Roger Flahaven, the Deputy Attorney General for Civil Litigation. (Pl.'s Resp. to Defs.' Motion to Dismiss Ex. A, ¶ 7.) In 2002, he was promoted to Senior Assistant Attorney General, the second lowest attorney position in the Office.

Plaintiff is a sixty-two-year-old man. His job performance was more than satisfactory and he consistently met or exceeded his employer's legitimate job expectations. On his last performance rating prior to his termination, he received a rating of "Exceeds Expectations" in six of twelve categories and "Meets Expectations" in the remaining categories. Plaintiff was replaced with a substantially younger and less qualified woman. In May 2006, Defendants also terminated two male Assistant Attorneys General over the age of 50 in the Consumer Fraud Bureau and replaced them with less qualified, younger females.

According to the job description of a Senior Assistant Attorney General in the Illinois Attorney General's Office,

> "A Senior Assistant Attorney General conducts complex legal research and represents the Attorney General in legal proceedings as assigned. The Senior Assistant Attorney General shall independently make prosecutorial and other

---

[1] For the purpose of this motion to dismiss for failure to state a claim under Federal rule of Civil Procedure 12(b)(6), this Court takes the allegations in the complaint as true, drawing all possible inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007).

litigation decisions. He or she shall prepare and try cases in various courts, interview witnesses, prepare motions and conduct research for future trials."[2]

Plaintiff did not serve on the Attorney General's personal staff, did not advise or personally report to the Attorney General, and did not have direct contact with the Attorney General during the performance of his job duties. Plaintiff had no authority to decide what lawsuits were filed or how they were resolved. The positions he occupied were career positions that did not coincide with the terms of office of the Attorney General.

## STANDARD OF DECISION

To satisfy federal pleading standards, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). Although, as Defendants point out, under *Bell Atlantic*, a complaint requires more than "labels and conclusions," *id.* at 1964-65, the Seventh Circuit has emphasized that *Bell Atlantic* "did not … supplant the basic notice pleading standard." *Tamayo v. Blagojevich*, No. 07-2975, 2008 WL 2168638, at *8 (7th Cir. May 27, 2008). In employment discrimination cases, a complaint must merely "give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* at *8.

---

[2] While normally matters outside of the pleadings cannot be given judicial notice without converting a motion to dismiss into a motion for summary judgment, Fed. R. Civ. P. 12(b), a court may look beyond the complaint to uncontested matters of public record. *See* Fed. R. Evid. 201(b); *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000). The Seventh Circuit has held that courts may use publicly available job descriptions "to determine whether the duties bring the job into the circle within which elected officials are entitled to demand political loyalty." *Riley v. Blagojevich*, 425 F.3d 357, 361-62 (7th Cir. 2005). Although Plaintiff argues that the job description does not match his actual responsibilities, courts may rely on such official job descriptions as a measure of the "inherent powers" of an office, regardless of "what any individual officeholder actually does." *Id.* at 360-61. Moreover, this court has no reason to suspect that the job description was altered in response to the claims in this case. *See id.* at 361. The description was updated in January of 2005, well before Levin's dismissal.

3

# ANALYSIS

Plaintiff alleges in Counts I and II of his Complaint that Defendants terminated his employment because of his age and sex in violation of Title VII and the ADEA. Under both statutes, a person who brings suit against an employer over an unlawful employment practice must be an "employee." 42 U.S.C. § 2000(e)(5); 29 U.S.C. § 623(a). Defendants argue that Plaintiff's ADEA and Title VII claims must be dismissed because Plaintiff is not an employee within the meaning of either statute.

Both Title VII and the ADEA define an employee as any person employed by an employer, with the following exemption for elected officials and certain members of their staff:

> [T]he term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or <u>an appointee on the policy making level</u> or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f) (emphasis added). Defendants argue that Plaintiff falls within this exemption because he is "an appointee on the policy making level." Therefore, they contend, he cannot bring this action for employment discrimination. The language of the elected officials exemption raises two questions for this court: the first is whether Plaintiff's position was "on the policy making level" and the second is whether the fact that Plaintiff was not directly appointed by the Attorney General means that his position does not fall within the exemption.

The first issue is whether Plaintiff played a "policy making" role within the Illinois Attorney General's Office. Plaintiff urges this court to consider that because he did not have a

close working relationship with the Attorney General, he had no influence on the Office's policy decisions. Plaintiff notes that some courts applying the elected officials exemption have considered whether plaintiffs actually had an immediate working relationship with an elected official. *See e.g. Tranello v. Frey,* 962 F.2d 244, 249 (2d Cir. 1992); *Anderson v. City of Albuquerque*, 690 F.2d 796, 801 (10th Cir. 1982).

This court's analysis of the exemption from coverage of Title VII and the ADEA for "policy making" positions, however, is governed by the Seventh Circuit's holding in *Americanos v. Carter*, 74 F.3d 138 (7th Cir. 1995). In that case, the Seventh Circuit held that the analysis of whether an individual falls within the exemption under Title VII and the ADEA is extremely similar to the analysis that determines whether an employee may be fired for political reasons. *Id.* at 144. *Americanos* dispensed with the age and sex discrimination claim of a Deputy Attorney General in the Indiana Attorney General's Office by noting that "the reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA [and Title VII]." *Id.*

Following tests established by the Supreme Court in *Elrod v. Burns*, 427 U.S. 347, 360 (1976), and *Branti v. Finkel*, 445 U.S. 507, 517 (1980), the *Americanos* court utilized a broad standard to determine whether an individual was exempt from the ban on political firings. It explained the *Elrod/Branti* test as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or on their implementation." 74 F.3d at 141. Rather than requiring the plaintiff to have a close advisory relationship with an elected official, as some other circuit courts do, the Seventh Circuit held in *Americanos* that a Deputy Attorney General fell within the exemption for political patronage positions because he could give input

5

into governmental decisions and could "potentially be called upon to perform any of the enumerated powers of the [Attorney General]." 74 F.3d at 141. Moreover, merely by providing research and opinions to his supervisors, the court opined that a Deputy Attorney General could potentially influence policy making. *Id.* at 141-44. Having concluded that the plaintiff in *Americanos* was exempt from the ban on political firings, the court went on to hold that he was likewise exempted from coverage of Title VII and the ADEA. *Id.* at 144.

Thus, based on *Americanos*, this Court concludes that the position of Senior Assistant Attorney General occupied by Plaintiff was indeed "on the policy making level." Defendants have introduced in their motion to dismiss job descriptions of Plaintiff's position stating that a Senior Assistant Attorney General "conducts complex legal research and represents the Attorney General in legal proceedings." The job description suggests that Plaintiff could potentially influence policy making by providing his supervisors with research and opinions or by appearing on behalf of the Attorney General. Although Plaintiff contends that he was not able to act without supervision, the position involves sufficient policy making to meet the low bar for policy making positions set by *Americanos*. The plaintiff in that case argued, as does Plaintiff here, that his position was not political, that he had no opportunity to influence policy for the Office, and that he was supervised continually and made no independent decisions. 74 F.3d at 142. The Seventh Circuit considered those arguments and nonetheless held that even a low-level attorney "could *potentially* be called upon to perform any of the enumerated duties of the AG." *Id.* at 141. Similarly, even if Plaintiff in this case had little independent authority, as he claims, he could potentially influence policy.

The second issue before this court is whether Plaintiff was an "appointee," and whether the circumstances under which he was hired matter for this court's analysis of the exception to

employee status. Defendants cite a case decided in 1925, *Saxby v. Sonnemann*, in support of their argument that the Attorney General "has the power to appoint Assistant Attorney Generals." 149 N.E. 526, 318 Ill. 600, 607 (1925). Plaintiff, however, was not appointed by the Attorney General herself, but by the Chief of Consumer Protection with the approval of the Deputy Attorney General for Civil Litigation. Plaintiff contends that, because an elected official did not appoint him, he could not have been "an appointee on the policy making level" under Title VII and the ADEA.

The Seventh Circuit has not addressed the issue of whether an individual must actually be appointed by an elected official directly in order to be an "appointee on the policy making level." In Seventh Circuit cases that have applied *Elrod* and *Branti* to Title VII or ADEA claims, an elected official had directly appointed the plaintiffs. *O'Neill v. Indiana Commission on Public Records*, 149 F.Supp. 582, 588 (S.D.Ind. 2001); *see also Americanos*, 74 F.3d at 144 (deputy attorney general was appointed by the elected attorney general); *Halloway v. Milwaukee Co.*, 180 F.3d 820, 828 n.10 (7th Cir. 1999) (court commissioner was appointed by an elected official). The sole issue in those cases was whether a position was "on the policy making level."

Defendants argue that *Americanos* should completely govern this court's analysis in the present case. On one hand, the language in *Americanos* suggests that if an individual is an employee under the *Elrod/Branti* doctrine, the court's inquiry ends: "the reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA [and Title VII]." 74 F.3d at 144. Following this logic, because a Senior Assistant Attorney General would be exempt from the ban on political firings, Plaintiff's claims must be dismissed.

Yet on the other hand, as Plaintiff points out, limiting the analysis in this way would neglect the plain meaning of the statutory language, which requires that an individual be an

7

"appointee." Given this language, some district courts in the Seventh Circuit have reconciled *Americanos* with the language in the exemption by requiring a two-pronged inquiry: whether an individual's work was "on the policy making level," and whether he was appointed in accordance with the statutory language of Title VII and the ADEA. However, they have applied the *Elrod/Branti* analysis used in *Americanos* only to the first question. *See e.g. O'Neill*, 149 F.Supp. at 589-90; *see also Pahmeier v. Marion Community Schools*, 2006 WL 1195213 at *7 (N.D.Ind. 2006) (holding that an "appointee on the policy making level" must be appointed by an elected official).

In *O'Neill*, the plaintiff was the Deputy Director of the Commission on Public Records and was hired by an appointee of the governor. 149 F.Supp.2d at 584. The court held that O'Neill was an "employee" within the meaning of Title VII. The court reasoned that the purpose of the elected officials exemption was "to avoid federal interference in the selection of key public officials." 149 F.Supp.2d at 587; *see also Halloway*, 180 F.3d at 828 (adopting similar interpretation in the ADEA context). The court concluded that the "provision must be read to require appointment by an elected official because the language regarding appointees was placed in a statute principally concerned with exempting elected officials." *O'Neill*, 149 F.Supp.2d at 589; *see also Gregory v. Ashcroft*, 501 U.S. 452, 481 (1991) (White, J. concurring) (stating that exemption excluded "persons appointed by elected officials to be on the policy making level.").

Additional support for the relevance of the statutory language comes from the language in the exemption stating that a position is not exempted from coverage if it is subject to state civil service laws. 149 F.Supp.2d at 588. In *Halloway*, the Seventh Circuit concluded that, while the *Elrod/Branti* test would ordinarily govern the employee status of a court commissioner, the position could not be excluded from coverage of the ADEA because it was subject to state civil

service laws. 180 F.3d at 828. Thus, the *Elrod* test is not the sole determination of the policy making analysis. Rather, the test "operates within the confines of the statutory language." *O'Neill*, 149 F.Supp.2d at 588.

This Court concludes that an interpretation of the exemption in 42 U.S.C. § 2000e(f) and 29 U.S.C. § 630(f) that both follows *Americanos* and avoids reading out statutory language is the appropriate interpretation. Plaintiff occupied a position "on the policy making level," but he was not an "appointee" within the plain meaning of the relevant statutes. Therefore, he does not fall within the exemption to employee status under Title VII and the ADEA. Plaintiff has demonstrated that he was an employee within the meaning of the statutes, Defendant's motion to dismiss Counts I and II of Plaintiff's Complaint is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff is an appointee on the policy-making level is **DENIED**.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **September 12, 2008**