**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HARVEY N. LEVIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 07 C 4765** |
| **v.** | ) | |
| | ) | |
| **LISA MADIGAN, individually, and as** | ) | **JUDGE DAVID H. COAR** |
| **ILLINOIS ATTORNEY GENERAL,** | | |
| **OFFICE OF THE ILLINOIS ATTORNEY** | | |
| **GENERAL, THE STATE OF ILLINOIS,** | | |
| **ANN SPILLANE, individually, ALAN** | | |
| **ROSEN, individually, ROGER P.** | | |
| **FLAHAVEN, individually, and DEBORAH** | | |
| **HAGAN, individually,** | | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Harvey Levin ("Levin" or "Plaintiff"), a former Senior Assistant Attorney

General, brings an action against the State of Illinois, the Office of the Illinois Attorney General,

Lisa Madigan, individually and in her official capacity as Attorney General, and four senior

members of the Office of the Illinois Attorney General in their individual capacities (collectively,

"Defendants"), alleging that his employment was terminated on the basis of his age and gender.

Plaintiff's four-count complaint sets forth the following claims: age discrimination in violation of

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 61 (Count I), sex

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e *et seq.* (Count II), sex discrimination in violation of the equal protection clause of the

14th Amendment under 42 U.S.C. § 1983 (Count III), and age discrimination in violation of the

equal protection clause of the 14th Amendment under 42 U.S.C. § 1983 (Count IV).  Presently

before this Court are three motions: (1) the individual Defendants' motion to dismiss [Dkt. 36], (2) the issues pending from the first motion to dismiss filed by Defendants Lisa Madigan, the Office of the Attorney General, and the State of Illinois [Dkt. 33], and (3) the second motion to dismiss filed by Defendants Lisa Madigan, the Office of the Attorney General, and the State of Illinois [Dkt. 58]. For the reasons stated below, the individual Defendants' motion to dismiss [Dkt. 36] is granted in part and denied in part, the entity Defendants' first motion to dismiss [Dkt. 33] is granted in part and denied in part, and the entity Defendants' second motion to dismiss [Dkt. 58], which the Court construes as a motion for reconsideration, is denied.

## FACTUAL BACKGROUND[1]

Plaintiff, Harvey Levin, a 62-year-old male, was employed as a Senior Assistant Attorney General in the Consumer Fraud Bureau of the Illinois Attorney General's Office at the time of his termination on May 12, 2006. He was hired as an Assistant Attorney General on September 5, 2000 by Patricia Kelly, the Chief of Consumer Protection, with the approval of Roger Flahaven, the Deputy Attorney General for Civil Litigation. In 2002, Levin was promoted to Senior Assistant Attorney General, the second lowest attorney position in the office.

Levin's job performance was more than satisfactory, and he consistently met or exceeded his employer's legitimate job expectations. On the last performance review prior to his termination, Levin received ratings of "Exceeds Expectations" in six of twelve categories and "Meets Expectations" in the remaining categories. Levin was replaced by a less qualified, substantially younger female. Around the same time that Levin was terminated, Defendants also terminated two other male Assistant Attorneys General who were over the age of 50 and whose

---

[1] For the purpose of resolving Defendants' motions to dismiss, the Court accepts the allegations in Plaintiff's First Amended Complaint as true and draws all possible inference in favor of Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

work performances were satisfactory or better.  Both were also replaced with younger, less

qualified females.

Defendants filed their first motions to dismiss in November 2007, and in December

2007, this Court ordered the parties to address specifically whether, as a matter of law, an

Assistant Attorney General is an "employee" under the ADEA and Title VII.  On September 12,

2008, the Court held that Plaintiff was not exempt from employee status under either Title VII or

the ADEA because he was not appointed by the Attorney General.  *Levin v. Madigan*, No. 07 C

4765, 2008 U.S. Dist. LEXIS 84616, at *14 (N.D. Ill. Sept. 12, 2008).  The Court now considers

the remaining arguments in Defendants' initial motions to dismiss, as well as the second motion

to dismiss filed by Defendants Lisa Madigan, Illinois Attorney General, the Office of the

Attorney General, and the State of Illinois.

## ANALYSIS

## I.      Defendants' Second Motion to Dismiss

The Court first addresses the second motion to dismiss filed by Defendants Lisa

Madigan, Illinois Attorney General, the Office of the Attorney General, and the State of Illinois.

Defendants move to dismiss Counts I and II of Plaintiff's complaint, which allege violations of

Title VII and the ADEA, for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Title VII and the ADEA protect "employees" from unlawful employment practices, 42 U.S.C.

§ 2000e-2; 29 U.S.C. § 623(a), yet exclude from coverage elected officials and certain members

of their staffs.  *See* 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f).  Defendants argue that, given the

additional facts the Court may consider under their 12(b)(1) motion, Plaintiff is not an

"employee" covered by Title VII or the ADEA.  Plaintiff contends that the issue of whether a

party is an "employee" under these statutes is not the proper subject of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The Court agrees.

In *Arbaugh v. Y & H Corp.*, the United States Supreme Court held that the issue of whether a party is an "employer" under Title VII was an element of the party's claim for relief relating to the merits, not a jurisdictional requirement; therefore, that issue was not the proper subject of a 12(b)(1) motion to dismiss on jurisdictional grounds. 546 U.S. 500, 516 (2006). In reaching this decision, the Court reasoned that the provision of Title VII dealing with the definition of an "employer" "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)) (internal quotation marks omitted). This observation led the Court to identify a "readily administrable bright line:"

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (citation and footnote omitted).

Applying that rule here, Congress' failure to designate "employee" status as a threshold jurisdictional issue means that the Court should treat this restriction as nonjurisdictional. *See id.* Indeed, Congress included the definition of "employee" in the same section as the definition of "employer" at issue in *Arbaugh*, *see* 42 U.S.C. § 2000e(f), and "has not suggested that the definition of 'employee' has any greater jurisdictional significance than the definition of 'employer.'" *Harris v. Attorney Gen. of the U.S.*, 657 F.Supp.2d 1, 8 (D.C. Cir. 2009); *see also Xie v. Univ. of Utah*, 243 Fed. Appx. 367, 371 (10th Cir. 2007) ("As with the fifteen-or-more employees requirement addressed in *Arbaugh*, there is no indication that Congress considered

employee status to be a threshold jurisdictional requirement."). Accordingly, *Arbaugh* requires that the Court characterize Plaintiff's "employee" status as a question relating to the merits of his case rather than as a jurisdictional issue.

Defendants correctly point out that Plaintiff fails to identify a case from the Seventh Circuit or any district court in Illinois which holds specifically that the question of whether a party is an "employee" under Title VII or the ADEA is nonjurisdictional. Nor has the Court been able to find such a case. Nevertheless, based on the clear rule stated by the Supreme Court in *Arbaugh*, and its application by other circuits to identical facts, the Court holds that the question of Plaintiff's "employee" status is nonjurisdictional. Every circuit court to consider this issue has found accordingly. *See Harris*, 657 F.Supp.2d at 8 (applying *Arbaugh* and concluding that the "employee" requirement of Title VII is nonjurisdictional); *Townsend v. Shook*, 323 Fed. Appx. 245, 250 (5th Cir. 2009) ("we hold that application of Title VII's personal staff exclusion does not present a lack of subject matter jurisdiction issue") (footnote omitted); *Xie*, 243 Fed. Appx. at 371 ("in light of the Supreme Court's decision in *Arbaugh*, we now conclude that employee status is an element of Dr. Xie's Title VII claims rather than a matter of subject matter jurisdiction.") (footnote omitted). Because the issue of Plaintiff's "employee" status is nonjurisdictional, it is not the proper subject of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

Instead of rejecting Defendants' motion outright, the Court construes this motion as a motion for reconsideration. Although Defendants suggest this alternative, they fail to cite a Federal Rule of Civil Procedure under which the Court may consider their motion for reconsideration. Typically, courts consider motions for reconsideration, which challenge the merits of a district court's decision, under either Rule 59(e) or Rule 60(b). *See Mares v. Busby*,

34 F.3d 533, 535 (7th Cir. 1994); *Mitchell v. Bledsoe*, No. 06-624-DRH, 2010 U.S. Dist. LEXIS 8778, at *1-2 (S.D. Ill. Feb. 2, 2010). Because Defendants failed to file this motion within the timeframe required by Rule 59(e),[2] the Court must analyze their motion under Rule 60(b). *See Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 742-43 (7th Cir. 2009).

Relief from judgment under Rule 60(b) "is an extraordinary remedy granted only in exceptional circumstances." *Pullen-Walker v. Roosevelt Univ.*, 263 Fed. Appx. 517, 518 (7th Cir. 2008) (citing *Karraker v. Rent-A-Center*, 411 F.3d 831, 837 (7th Cir. 2005)). Under Rule 60(b), courts may grant parties relief on several narrow grounds including mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud. *See* Fed. R. Civ. P. 60(b). However, "the rule is not intended to correct mere legal blunders," *Cash v. Ill. Div. of Mental Health*, 209 F.3d 695, 697 (7th Cir. 2000), and "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

The basis for Defendants' motion is that a "manifest error of fact" caused the Court to conclude improperly that Plaintiff was an "employee" under Title VII and the ADEA. Defendants specifically challenge the Court's holding that Plaintiff was not appointed by an elected official and therefore failed to fall within the provisions excluding elected officials and their personal staff members from the protection of Title VII and the ADEA. *See* 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f). According to Defendants, Plaintiff misrepresented the facts necessary to the Court's consideration of whether Plaintiff was appointed by an elected official

---

[2] As of December 1, 2009, Rule 59(e) allows a party 28 days after the entry of judgment in which to file a motion to alter or amend a judgment. Previously, Rule 59(e) allowed only 10 days for the filing of such a motion. As the Court entered the judgment at issue on September 12, 2008, and Defendants filed the instant motion on October 15, 2008, Defendants failed to file their motion within the proper timeframe under either the old or the new rule.

(namely, Attorney General James Ryan). However, Defendants fail to provide evidence that supports this serious allegation. Instead, Defendants essentially repackage the same arguments already considered and rejected by this Court. In that vein, Defendants' motion revolves around several documents they claim indicate Plaintiff's acknowledgment that he was appointed by the Attorney General. These documents consist of a form Plaintiff signed, which is entitled "Attorney General's Rules of Professional Conduct Compliance Statement Form" and states that Plaintiff was "duly appointed to serve by Attorney General Jim Ryan," and two "certificates of appointment" in Plaintiff's name—one issued under Attorney General Ryan's tenure, and another issued by Attorney General Lisa Madigan when she took office. Quoting from these exact documents in support of their first motion to dismiss, Defendants pointed out that "[t]he certificate states that Harvey Levin 'has been appointed Assistant Attorney General and is authorized and empowered to execute and fulfill the duties of that Office according to the law, and to have and to hold the said Office, with all of the powers, privileges, and emoluments thereunto appertaining during the pleasure of the Attorney General.'" (R. 52, Defs' Reply Br. in Supp. of Defs' First Mot. to Dismiss at 8-9.)

Invoking the same "certificates of appointment" again here, Defendants argue that these documents demonstrate that Plaintiff misled the Court by claiming that he was not appointed by Attorney General James Ryan and by offering evidence that he was hired by Patricia Kelly, the Chief of Consumer Protection, with the approval of Roger Flahaven, Deputy Attorney General of Civil Litigation. However, Defendants neither present new arguments nor offer any evidence that Plaintiff was not in fact hired by Patricia Kelly, without any participation by Attorney General James Ryan. Perhaps Defendants take issue with the Court's legal conclusion that Plaintiff was "appointed" by the individuals who hired him, not by the Attorney Generals whose

names formally appear on his certificates of appointment. However, a Rule 60(b) motion is not the proper vehicle for a challenge to the Court's legal analysis. *See Cash*, 209 F.3d at 697. Defendants have failed to demonstrate that exceptional circumstances justify the extraordinary remedy of relief under Rule 60(b), and their motion for reconsideration is therefore denied.

## II.     Defendants' Initial Motions to Dismiss

The Court now turns to the initial motions to dismiss filed by Defendants. Defendants, Lisa Madigan, Illinois Attorney General, the Office of the Attorney General, and the State of Illinois (the "Entity Defendants") and Defendants, Lisa Madigan, individually, Ann Spillane, individually, Roger Flahaven, individually, and Deborah Hagan, individually (the "Individual Defendants") filed separate motions to dismiss. Before considering each motion separately, the Court will address the issues common to both motions.

### a.  Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations in the plaintiff's complaint as true and draws all possible inferences in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). Accordingly, to survive a motion to dismiss, a complaint must simply "state a claim that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if it demonstrates "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. The plaintiff's factual allegations need not be "detailed," but they must include more than "labels and conclusions" in order to "give the defendant fair notice of what . . . the

claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47(1957)) (internal quotation marks omitted).

### b.  Sufficiency of Plaintiff's Pleadings

In both of their initial motions to dismiss, Defendants argue that Plaintiff has not pled sufficiently detailed factual allegations to survive a 12(b)(6) motion to dismiss in the wake of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Defendants, however, overlook the minimal pleading standard required for employment discrimination claims.  *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).  Because Plaintiff has satisfied this standard, the Court rejects Defendants' argument.

Applying *Twombly* to claims of employment discrimination, the Seventh Circuit in *Tamayo v. Blagojevich* "acknowledg[ed] that a complaint must contain something more than a general recitation of the elements of the claim," but "reaffirmed the minimal pleading standard for simple claims of race or sex discrimination." *Id.* at 1084; *see also Velazquez v. Office of Ill. Scy. of State*, No. 09 C 3366, 2009 U.S. Dist. LEXIS 101588, *5-8 (N.D. Ill. Nov. 2, 2009) (describing the minimal pleading standard for employment discrimination claims after *Twombly* and *Tamayo*).  *Twombly* established  "two easy-to-clear hurdles" for a complaint in federal court: (1) the complaint must provide sufficient notice to enable the defendant to investigate and prepare a defense, and (2) the allegations must suggest a plausible—not merely speculative— right to relief.  *Tamayo*, 526 F.3d at 1084 (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).  Even after the heightened pleading standard set forth in *Twombly*, a complaint alleging employment discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo*, 526 F.3d at 1084.  The complainant "need not allege either the factual or legal

'elements' of a prima facie case under the employment-discrimination laws." *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). Explaining the minimal pleading standard required for employment discrimination claims, the Seventh Circuit has noted that "[p]eople have reasonably clear ideas of how a racially biased person might behave, and a defendant responding to an allegation of racial bias can anticipate the sort of evidence that may be brought to bear and can investigate the claim." *Concentra*, 496 F.3d at 782. Moreover, "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim." *Id.* An allegation that states "quite generally," "I was turned down for a job because of my race" is sufficient to survive a 12(b)(6) motion to dismiss. *Id.*

Contrary to Defendants' argument, Plaintiff has satisfied the minimal pleading standard for his sex and age discrimination claims. Plaintiff alleges that he is a 62-year-old male who was meeting his employer's legitimate expectations, when he was nonetheless terminated and replaced by a substantially younger, less qualified female employee. Plaintiff also pleads that, around the same time that his employment was terminated, Defendants terminated two other male Assistant Attorneys General who were over the age of 50 and whose work performances were satisfactory or better. Plaintiff alleges that, like him, these employees were replaced by younger, less qualified females. Although Plaintiff only had to plead that he suffered an adverse employment action on the basis of his sex or age, *see Tamayo*, 526 F.3d at 1084, Plaintiff nonetheless pleads facts supporting a prima facie case under Title VII and the ADEA. These facts certainly provide Defendants with sufficient notice to investigate and prepare a defense against Plaintiff's claims. *See id.* Moreover, "it is difficult to see what more [Plaintiff] could have alleged, without pleading evidence, to support [his] claim that []he was discriminated

against" based on his sex or age.  *Id.* at 1085; *see Heinze v. S. Ill. Healthcare*, No. 08-672-GPM, 2010 U.S. Dist. LEXIS 3931, at *11-12 (S.D. Ill. Jan. 19, 2010) (plaintiff's age and gender discrimination claims survived a 12(b)(6) motion to dismiss where she pled that she was female, over fifty years old, performed her job satisfactorily, was terminated, and was replaced by a less qualified male employee eleven years younger than her).[3]

Defendants next argue that Plaintiff has pled himself out of court by alleging facts which demonstrate that he has no claim.  *See Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995).  Specifically, Defendants contend that Plaintiff pleads facts demonstrating that he failed to meet his employer's legitimate job expectations, justifying his termination on non-discriminatory grounds.  To support their argument, Defendants points to the following facts alleged in Plaintiff's complaint:

(1) "Senior Assistant Attorneys General have no discretion and no authority whatsoever in deciding which cases or lawsuits are filed, prosecuted, defended, or settled" (Compl. ¶ 25(e));

(2) "Senior Assistant Attorneys General do not have any authority or discretion to decide what words, sentences, or phrases are placed in a lawsuit, or in the resolution of a lawsuit" (*Id.* at ¶ 25(f)); and

(3) "Senior Assistant Attorneys General do not independently make prosecutorial and other litigation decisions" (*Id.* at ¶ 25(m)).

By asserting this argument, Defendants defy the obligation to "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs." *Christensen v. County of Boone*, 483 F.3d 454, 457 (7th Cir. 2007).  Instead, Defendants misrepresent Plaintiff's allegations by suggesting that claims about the nature of the Senior

---

[3] Plaintiff's attempt to analogize this case to the dismissal of the plaintiff's complaint in *Jackson v. Casey*, No. 07 C 5348, 2007 U.S. Dist. LEXIS 70856 (N.D. Ill. Sept. 25, 2007), must fail.  In that case, the plaintiff pled "several skeletal and purely conclusory" allegations of race discrimination, and the court dismissed his claims because his "conclusory playing of the race card . . . [wa]s totally speculative, rather than plausible."  *Id.* at *2.  Unlike the plaintiff in *Jackson*, here, Plaintiff pleads that he suffered a specific adverse employment action—he was terminated— on the basis of his race or gender.  That is all he must do to survive a 12(b)(6) motion to dismiss for failure to state a claim.  *See Tamayo*, 526 F.3d at 1084.

Assistant Attorney General *position* somehow demonstrate that *Plaintiff* performed his job unsatisfactorily. To that end, Defendants ignore the only paragraphs of Plaintiff's complaint directed to his job performance. In these paragraphs, Plaintiff pleads:

(1) "Throughout his employment, his job performance was more than satisfactory and he consistently met or exceeded his employer's legitimate job expectations" (Compl. ¶ 7.)

(2) "Defendants' last performance rating of plaintiff prior to May 12, 2006 rated plaintiff as 'Exceeds Expectations'—the highest rating on six out of twelve categories and 'Meets Expectations' on the remaining performance criteria." (*Id.* at ¶ 8.)

Well-settled law requires the Court to accept these allegations as true and draw all reasonable inferences in the light most favorable to Plaintiff. *Christensen*, 483 F.3d at 457. The Court must therefore reject Defendants' argument that Plaintiff has pled himself out of court by pleading that he was not meeting his employer's legitimate expectations.

### c. Individual Defendants' Motion to Dismiss

The Court now turns to the separate issues raised by the Individual Defendants and the Entity Defendants in their motions to dismiss, beginning with the Individual Defendants' motion to dismiss.

### i. ADEA Exclusivity

In Count IV of his amended complaint, Plaintiff asserts an equal protection claim for age discrimination in violation of 42 U.S.C. § 1983. The Individual Defendants move to dismiss Count IV, arguing that the ADEA provides the exclusive federal remedy for age discrimination, and therefore claims alleging age discrimination under § 1983 are not permitted. The Seventh Circuit has not yet addressed this issue, although one Northern District of Illinois judge confronted with this question found "no reason to foreclose state and local employees from bringing age discrimination claims under § 1983, just as they can assert sex or race discrimination claims under § 1983." *McCann v. City of Chicago*, No. 89 C 2879, 1991 U.S.

Dist. LEXIS 83, at *7 (N.D. Ill. Jan. 3, 1991) (holding that the ADEA did not prohibit an age-based equal protection challenge to a statute).  *But see Tucker v. George*, No. 08-cv-0024-bbc, 2009 WL 1444194, at *3 (W.D. Wis. May 21, 2009) (stating in dicta that "whether plaintiff can prosecute her age discrimination claim by way of a § 1983 equal protection claim is in serious doubt").  Plaintiff correctly points out that, over the years, this circuit has entertained many age discrimination claims brought against state actors under the equal protection clause.  *See, e.g.*, *Gault v. Garrison*, 569 F.2d 993, 996 (7th Cir. 1977); *Kolz v. Bd. of Educ. of the City of Chicago*, No. 77-C-2548, 1978 U.S. Dist. LEXIS 14464 (N.D. Ill. Nov. 8 1978); *Van Arsdel v. Indiana Util. Regulatory Comm'n*, No. IP 88-384-C, 1990 U.S. Dist. 13936, at *3-4 (S.D. Ind. Mar. 9, 1990); *Haag v. Bd. of Educ.*, 655 F.Supp. 1267, 1274 (N.D. Ill. 1987); *McCann*, 1991 U.S. Dist. LEXIS 83, at *7.  However, none of these decisions squarely addresses the question at issue in this case: whether the ADEA provides the exclusive federal remedy for age discrimination in employment, thus foreclosing age discrimination claims brought pursuant to § 1983.

The authority on this issue in other circuits points in many directions.  Several courts of appeals have held that the ADEA provides the exclusive remedy for age discrimination claims and therefore precludes age discrimination suits brought under § 1983.  *See Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051 (9th Cir. 2009); *Migneault v. Peck*, 158 F.3d 1131 (10th Cir. 1998); *Lafleur v. Texas Dept of Health*, 126 F.3d 758 (5th Cir. 1997); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir. 1989).[4]  Defendants rely primarily on the leading circuit court decision on the issue: the Fourth Circuit's opinion in *Zombro v. Baltimore*.  In *Zombro*, the Fourth Circuit reasoned that the comprehensiveness of the ADEA's statutory

_____

[4] The Fifth Circuit's decision in *Lafleur*, on which the Tenth Circuit heavily relies in *Migneault*, is distinguishable from this case.  In *Lafleur*, the Court held that "where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA."  *Lafleur*, 126 F.3d at 760.  The Court has no qualms with this decision.  Unlike *Lafleur*, Plaintiff here alleges a § 1983 claim for violations of an independent constitutional right under the equal protection clause, not a right created by the ADEA itself.

scheme indicates Congress' intent to establish an exclusive remedy for age discrimination; otherwise, "if 42 U.S.C. § 1983 is available to the ADEA litigant, the congressional scheme behind ADEA enforcement could easily be undermined, if not destroyed." *Id.* at 1367.

The district court decisions on the subject are deeply divided. In *Mummelthie v. City of Mason*, a case on which Plaintiff relies, a district court in the Northern District of Iowa performed a highly comprehensive analysis of the language, structure, and legislative history of the ADEA and concluded that the ADEA does not provide the exclusive remedy for age discrimination claims. 873 F.Supp. 1293 (N.D. Iowa 1995). Although the district courts remain fractured in the wake of *Zombro* and *Mummelthie*, one district court has noted that "[a] recent trend favors *Mummelthie*'s interpretation." *Mustafa v. Nebraska Dep't of Corr. Servs.*, 196 F.Supp.2d 945, 955 n.11 (D. Neb. 2002) (collecting cases).

In *Mummelthie*, the court criticized the Fourth's Circuit's decision in *Zombro* for overlooking the instructive analogy between the ADEA and Title VII, which does not foreclose equal protection claims for race and sex discrimination brought under § 1983, and for considering neither "the statutory language of the ADEA itself nor its legislative history, before concluding that the ADEA provided the exclusive federal remedy for age discrimination in employment." *Mummelthie*, 873 F.Supp. at 1319. Building from the Iowa district court's decision in *Mummelthie*, which performed a significantly more searching analysis of the ADEA than any of the appellate courts to address this issue, the Court concludes that the ADEA does not foreclose Plaintiff's equal protection claim for age discrimination under § 1983. As discussed below, this decision is informed by (1) the Supreme Court's well-settled distaste for repeals by implication, (2) the Seventh Circuit's acknowledgement that Title VII does not preclude equal protection claims for race and sex discrimination under § 1983, coupled with this

circuit's recognition of the parallels between Title VII and the ADEA, and (3) the language and legislative history of the ADEA.

The Supreme Court generally disfavors repeals by implication and therefore requires "irreconcilable conflict" between two statutes in order to find that the later statute preempts the earlier one. *Branch v. Smith*, 538 U.S. 254, 273 (2003) (internal citations and quotation marks omitted); *Rogers v. Baxter Int'l*, 521 F.3d 702, 705 (7th Cir. 2008). Where "two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l*, 534 U.S. 124, 143-44 (2001) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)) (internal quotation marks omitted). When analyzing statutes enacted to protect federal rights after § 1983, the Supreme Court has opined that a statute's comprehensive enforcement mechanism may demonstrate Congress' intent to foreclose a remedy under § 1983. *Golden Gate Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (citing *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981)). However, in *Golden Gate*, the Court cautioned:

> The availability of administrative mechanisms to protect the plaintiff's interest is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy. Rather, the statutory framework must be such that allowing a plaintiff to bring a § 1983 action would be inconsistent with Congress' carefully tailored scheme. The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant.

*Id.* at 106-07. As further demonstrated by decisions following *Golden Gate*, the Supreme Court is loath to imply that a statute forecloses § 1983 remedies simply because it provides a comprehensive remedial scheme. *See Blessing v. Freestone*, 520 U.S. 329, 347 (1997) ("Only twice have we found a remedial scheme sufficiently comprehensive to supplant § 1983."); *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994) (cases in which congressional intent to foreclose

a § 1983 remedy may be inferred from a comprehensive remedial scheme are "exceptional," and § 1983 otherwise "remains a generally and presumptively available remedy for claimed violations of federal law"). The Court finds that Defendants have not met their burden to demonstrate that Congress has expressly withdrawn § 1983 remedies for age discrimination by enacting the ADEA; just as Title VII and §1983 are "capable of coexistence" in this circuit, so too are the ADEA and §1983.

The Court's conclusion finds support in the well-recognized analogy between the ADEA and Title VII, which does not preclude § 1983 remedies. Acknowledging the similarities between Title VII and the ADEA, both the Supreme Court and the Seventh Circuit have turned to Title VII for help interpreting the provisions of the ADEA. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755-56 (1979) (relying on Title VII to interpret the ADEA); *Kelly v. Waukonda Park Dist.*, 801 F.2d 269, 271 (7th Cir. 1986) ("The Supreme Court and our court have recognized 'important similarities' in objectives, substantive prohibitions, and legislative histories between the ADEA's protection against age discrimination and Title VII's protection against employment discrimination on the basis of race, sex, or religion."); *E.E.O.C. v. Elrod*, 674 F.2d 601, 607 (7th Cir. 1982) ("We find the history of Title VII particularly helpful because it is the legislation which most closely parallels the ADEA.").[5] The Court therefore finds significance in the Seventh Circuit precedent recognizing that Title VII does not preclude claims alleging discrimination under § 1983. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004) ("The Supreme Court has never discussed the most common overlap -- Title VII and § 1983 when the employer is a state actor -- but like other appellate courts we have held that

---

[5] In *Zombro*, the Fourth Circuit relied on the Fair Labor Standards Act "FLSA" when interpreting the ADEA. *Zombro*, 868 F.2d at 1369. However, the Seventh Circuit has held that Title VII provides a more useful comparison than the FLSA. *Kelly*, 801 F.2d at 271 ("the connection of the ADEA amendments to the legislation enacting FLSA amendments was largely fortuitous") (quoting *Elrod*, 674 F.2d at 610) (internal quotation marks omitted).

employees may resort to both statutes despite the substantial differences in their terms."); *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985) (state employee could sue state government employer for violations of the 14th Amendment under § 1983 even if the same facts would suggest a violation of Title VII); *Collins v. Cook County*, No. 06 CV 6651, 2008 WL 92748, at *28 (N.D. Ill. Nov. 14, 2008) ("Claims of discrimination under § 1983 may be brought in addition to any claims an employee has under Title VII.").  Based on the close relationship between Title VII and the ADEA, the Court concludes that just as Title VII preserves litigants' rights to assert race or sex discrimination claims under § 1983, the ADEA permits litigants like Plaintiff to bring § 1983 claims alleging age discrimination in violation of constitutional rights. *See McCann*, 1991 U.S. Dist. LEXIS 83 at *7 (finding "no reason to foreclose state and local employees from bringing age discrimination claims under § 1983, just as they can assert sex or race discrimination claims under § 1983."); *Haag v. Bd. of Educ.*, 655 F.Supp. 1267, 1274 (N.D. Ill. 1987) (plaintiff alleging violations of the 14th Amendment "is not limited to Title VII and the ADEA, but may also bring her complaint under section 1983").

Finally, the Court turns to the language and history of the ADEA, a topic overlooked by both the Fourth Circuit in *Zombro* and the most recent court of appeals to consider the exclusivity of the ADEA, the Ninth Circuit in *Ahlmeyer*.[6]  The analysis alternatively provided by the court in *Mummelthie* is instructive.  First addressing the statute's language, the *Mummelthie* court concluded that "[b]ecause the language of the ADEA does not purport to extend the Act to constitutional rights, nor hint at any attempt at exclusivity, . . . Congress did not intend the

---

[6] In *Mummelthie*, the court criticized the *Zombro* court for failing to analyze the ADEA's language and legislative history and "instead inferring congressional intent from the comprehensiveness of the ADEA." 873 F.Supp. at 1324-25.  The court continued, "[e]ven where such an inference may seem strong, to draw the inference without consulting the actual legislative history seems to this court to be a cardinal error." *Id.*

ADEA to provide the exclusive, indeed any, remedy for violation of such constitutional rights in employment." *Mummelthie*, 873 F.Supp. at 1325.

Next, the court explained that its conclusion was bolstered by the legislative history of the ADEA. Senator Lloyd Bentsen, who sponsored parallel amendments to Title VII and the ADEA extending both statutes' coverage to employees of state and local governments, stated that "those principles underlying the provisions in the EEOC bill (extending Title VII to state and local employees) are directly applicable to the Age Discrimination in Employment Act." *Id.* (quoting 118 Cong. Rec. 15, 895 (1972)) (internal quotation marks omitted). The principles to which Senator Bentsen referred, according to the *Mummelthie* court, included Congress' explicit intention that the Title VII amendments would not foreclose § 1983 claims: "Inclusion of state and local employees among those enjoying the protection of Title VII provides an alternative administrative remedy to the existing prohibition against discrimination perpetuated 'under color of state law.'" *Id.* (quoting H.R. Rep. No. 238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin. News 2137, 2154) (internal quotation marks omitted). This analysis is consistent with the Seventh Circuit's reliance on Senator Bentsen's above-quoted comments as evidence of congressional intent regarding the ADEA. *See Kelly*, 801 F.2d at 271; *Elrod*, 674 F.2d at 607. Finally, despite Congress' awareness that litigants framed their age discrimination claims as equal protection claims, "Congress expressed no disapproval of the practice or suggested in any way that it intended ADEA to foreclose such constitutional challenges." *Zombro*, 868 F.2d at 1374-75 (Murnaghan, J., concurring in part and dissenting in part). Instead, one committee report suggested that some members of Congress expected these constitutional challenges to continue in the future, despite doubts as to their chance of success. *Id.* at 1375. Based on the legislative history and language of the ADEA, and the statute's analogy to Title

VII, the Court finds that the ADEA does not foreclose Plaintiff's equal protection claim for age discrimination under § 1983.

### ii. Qualified Immunity

Defendants next move to dismiss Plaintiff's claims for damages under Counts III and IV on the basis of qualified immunity. Qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a qualified immunity defense is asserted, the plaintiff faces the burden of demonstrating that "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). The court must consider the specific facts of the case "compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988), *abrogated in part on other grounds*, *Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004). The plaintiff may meet his burden by presenting "a clearly analogous case establishing a right to be free from the specific conduct at issue." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). However, "the factual circumstances of the alleged violation need not be 'identical' to prior holdings in order to find an officer entitled to qualified immunity." *Rakovich*, 850 F.2d at 1209.

With respect to Count III, the Individual Defendants' qualified immunity defense must fail. In the Seventh Circuit, the law prohibiting public employers from engaging in sex

discrimination in violation of the equal protection clause of the 14th Amendment is well-settled. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) ("the right to be free from sex discrimination is clearly established"); *Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005) ("It has been plain in this circuit for quite some time that arbitrary gender-based discrimination . . . violates the equal protection clause."). Because Plaintiff's constitutional right to be free from gender discrimination is clearly established, the Individual Defendants are not entitled to qualified immunity for Plaintiff's gender discrimination claim under Count III.

In contrast, whether the Seventh Circuit permits equal protection claims for age discrimination in light of the ADEA is unclear. Indeed, this Court's lengthy analysis of the availability of such claims demonstrates that the law is not clearly established. As discussed above, neither the Supreme Court nor the Seventh Circuit has addressed whether the ADEA precludes claims for age discrimination under § 1983, and the authority on this issue from other courts is deeply divided. Because the availability of Plaintiff's equal protection claim for age discrimination is not clearly established, Defendants are entitled to qualified immunity with respect to Count IV. The Court therefore dismisses Plaintiff's equal protection claim for damages for age discrimination under Count IV.

Finally, Plaintiff's claims for injunctive relief against the Individual Defendants in Counts III and IV must be dismissed, as "section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587 (7th Cir. 2005).

### d. First Motion to Dismiss by Defendants Lisa Madigan, Illinois Attorney General, the Office of the Illinois Attorney General, and the State of Illinois

#### i. Proper Defendants in Counts I & II

Defendants introduce several arguments aimed to eliminate improperly named parties

from Plaintiff's complaint. First, the Entity Defendants argue that the State of Illinois should be dismissed from Counts I and II because it is not an "employer." Although Defendants address their argument only to the definition of "employer" under Title VII, they seek dismissal of the State of Illinois as a defendant from both Plaintiff's Title VII and ADEA claims. The Court therefore construes Defendants' motion to dismiss as arguing that the State is not an "employer" under either Title VII or the ADEA. In any event, Title VII and the ADEA "use virtually the same definition of 'employer,'" and courts' interpretations of a definition in one statute are persuasive in interpreting the same definition in the other statute. *Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995); *see also E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir. 1995) (employer definitions under the ADEA and Title VI are "essentially interchangeable"). Accordingly, the case law Defendants cite regarding the definition of "employer" under Title VII informs the Court's understanding of the same term in the ADEA.

Moving for the State's dismissal from Counts I and II, Defendants point to the Seventh Circuit's decision in *Hearne v. Bd. of Educ. of City of Chicago*, which held that, in Title VII suits against state entities, the term "employer" "is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility." 185 F.3d 770, 777 (7th Cir. 1999); *see also Holman v. Indiana*, 211 F.3d 399, 401 n. 1 (7th Cir. 2000). The court in *Hearne* dismissed the State, among other defendants, because only the Board of Education had the power to hire and fire employees. *Hearne*, 185 F.3d at 777. Defendants claim that, here, the Office of the Attorney General, rather than the State of Illinois, has the power to hire and fire Assistant Attorneys General, and therefore the State is not an "employer" under Title VII or the ADEA. In response, Plaintiff contends that Defendants' argument overlooks the distinction between an Illinois constitutional officer, on the one hand, and municipal corporations, local body politics, or

agencies of another State, on the other.  Plaintiff cites no case law explaining the significance of this distinction, and the Court has uncovered no such authority.  The Court therefore concludes that the State of Illinois is not an "employer" under Title VII or the ADEA and grants Defendants' motion to dismiss the State of Illinois as a defendant under Counts I and II.

Defendants next argue that Plaintiff's claims under Counts I and II against Lisa Madigan, in her official capacity, and the Office of the Attorney General are redundant, and therefore Plaintiff's claims against Lisa Madigan in her official capacity should be dismissed.  A suit against an official in her official capacity is actually a suit against the government entity.  *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) ("the complaint names the mayor as a defendant in his official capacity only, which is the equivalent of suing the city"); *Knox v. Metro. Water Reclamation Dist.*, No. 06 C 1158, 2007 U.S. Dist. LEXIS 44704, at *13 (N.D. Ill. June 20, 2007).  Where the plaintiff names the government entity as a defendant in the suit, the claim against the individual in her official capacity is redundant.  *See Kielbasa v. Ill. E.P.A.*, No. 02 C 4233, 2003 WL 880995, at *3 (N.D. Ill. Mar. 2, 2003) (dismissing claims against the agency's director in her official capacity as redundant to claims against the agency); *Berry v. Ill. Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *8 (N.D. Ill. Feb. 2, 2001) (since state agency is a defendant, claims against state officials in their official capacities were redundant and therefore dismissed).  Here, Plaintiff's Title VII and ADEA claims against Lisa Madigan in her official capacity and the Office of the Attorney General are redundant.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's claims against Lisa Madigan in her official capacity under Counts I and II.

### ii. Plaintiff's Prayer for Relief in Counts I & II

Next, the Entity Defendants move to dismiss Plaintiff's claim for emotional damages in Count I, arguing that the ADEA does not provide for such a remedy. 29 U.S.C. § 626(b); *see also Franzoni v. Hartmax Corp.*, 300 F.3d 767, 773 (7th Cir. 2002). Plaintiff agrees, and the Court therefore dismisses Plaintiff's claim for damages for emotional distress in Count I.

The Entity Defendants also move to dismiss Plaintiff's claim for emotional damages in excess of $300,000 in Count II, arguing that damages for violations of Title VII are capped at $300,000. 42 U.S.C. § 1981a(b)(3)(D); *see also Smith v. Chicago School Reform Bd. of Trs.*, 165 F.3d 1142 (7th Cir. 1999). Plaintiff does not dispute that the maximum recovery for emotional damages under Title VII is $300,000. However, without citing case law, Plaintiff argues that he should be able to request more than $300,000 from the jury, though a verdict in excess of this amount may be reduced to conform to the statutory maximum. Because Plaintiff fails to cite a legal basis for his position, the Court dismisses his claim in Count II for emotional damages in excess of $300,000.

### iii. Plaintiff's Prayer for Relief in Counts III & IV

The Entity Defendants move to dismiss Plaintiff's claims for monetary damages in Counts III and IV. Plaintiff, in response, concedes that the Entity Defendants may not be subject to suit for monetary damages under § 1983. The Eleventh Amendment prohibits private parties from filing a federal lawsuit against a state, state agency, or state official unless the state waives its Eleventh Amendment immunity by consenting to suit, or Congress unequivocally abrogates the state's immunity. *See Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). Illinois has not consented to suit in this case, and it is well-settled that Congress did not abrogate states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332,

342 (1979); *see Smith v. Illinois*, No. 07 C 7048, 2009 WL 1515308, at *7 (N.D. Ill. May 27, 2009). Moreover, states, their agencies, and officials are not "persons" who may be subject to suit for damages under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 69-71 (1989); *Levenstein v. Salafsky*, 414 F.3d 767, 772 (7th Cir. 2005). Accordingly, to the extent that Plaintiff seeks monetary damages or indemnification from the Entity Defendants under Counts III and IV, those claims are dismissed.

*Ex Parte Young* provides a limited exception to the doctrine of sovereign immunity by allowing parties to sue state officials, in their official capacity, for equitable relief that is prospective in nature. 209 U.S. 123 (1908). Counts III and IV of Plaintiff's first amended complaint seek declaratory and injunctive relief, including reinstatement and other prospective equitable relief. The parties agree that Plaintiff may seek reinstatement under *Ex Parte Young*. *See Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir. 1987); *Doe v. Bd. of Trs. of the Univ. of Ill.*, 429 F.Supp.2d 930, 941 (N.D. Ill. 2006) ("when an individual's termination or dismissal directly violates a federal constitutional or statutory guarantee, he may maintain a suit for reinstatement").

Defendants, however, take issue with Plaintiff's other requests for injunctive relief, claiming that he fails to meet the basic requirement for equitable relief under *City of Los Angeles v. Lyons* because he does not demonstrate "the likelihood of substantial and immediate irreparable injury." 461 U.S. 95, 103 (1983). Specifically, Defendants contend that, because Plaintiff is no longer employed by Defendants, he cannot show that the equitable relief he seeks would remedy an ongoing harm. If reinstatement were not a possibility, Defendants' argument might hold merit. *See Griffith v. Pepmeyer*, No. 07-1130, 2007 WL 3407181, at *5 (C.D. Ill. Nov. 14, 2007) (holding that plaintiffs' request for an injunction prohibiting their former

employer from further discrimination was moot because plaintiffs no longer worked for defendant and plaintiffs did not seek reinstatement); *Bohen v. City of East Chicago*, 622 F.Supp. 1234, 1244 (D.C. Ind. 1985) (plaintiff was ineligible for reinstatement and lacked standing to obtain an injunction concerning the department where she will not work again), *rev'd on other grounds*, 799 F.3d 1180 (7th Cir. 1986). Here, however, Plaintiff requests reinstatement, and the parties agree that this request is permissible. If Plaintiff's employment is reinstated, he may indeed be subject to the same allegedly discriminatory policy that he challenges in this lawsuit. To the extent that Plaintiff seeks an injunction requiring Defendants to cease engaging in sex or age discrimination, such relief *would* remedy a harm that Plaintiff is likely to suffer again. *See Lyons*, 461 U.S. at 103. The Court therefore rejects the Entity Defendants' motion to dismiss Plaintiff's claim for injunctive relief in Counts III and IV of his first amended complaint.

## CONCLUSION

For the reasons stated above, the Entity Defendants' first motion to dismiss [Dkt. 33] is granted in part and denied in part, the Individual Defendants' motion to dismiss [Dkt. 36] is granted in part and denied in part, and the Entity Defendants' second motion to dismiss [Dkt. 58], which the Court construes as a motion for reconsideration, is denied.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** March 10, 2010